GILL *v.* STATE.

4929                                                        322 S. W. 2d 65

Opinion delivered March 23, 1959.

*Gordon H. Sullivan,* for appellant.

*Bruce Bennett, Atty. Gen.,* by *Bill J. Davis, Asst. Atty. Gen.,* for appellee.

CARLETON HARRIS, Chief Justice. Willie Gill was charged by Information with the crime of murder in the second degree, it being alleged that he murdered Sam

Rowland, Jr., on June 8, 1957. Appellant went to trial on April 8, 1958, was convicted of voluntary manslaughter, and sentenced to two years in the penitentiary. From such judgment, comes this appeal.

The evidence reflects that a dice game was in progress on June 8, 1957, around 6 a.m., at the home of Elois Jackson. Among participants were appellant and the deceased. The deceased first became involved in an argument with Ernest Bryant, and subsequently Rowland and Gill began to argue over the dice. According to the testimony, Rowland tried to take the dice from Gill, struck appellant, and two others present, James Doris and James Jackson, got between the two, endeavoring to hold Rowland. Under the State's evidence, Gill reached around Doris and Jackson, and struck deceased in the groin with a pocket knife. Rowland went to the front of the house, and subsequently on to the outside where he fell. Appellant ran out the back way. One of the participants in the game, James Doris, started out to take Rowland to the hospital, had a wreck, and Rowland was taken on to the hospital by ambulance, where he died from excessive loss of blood.

The evidence on the part of the State is ample to sustain a manslaughter conviction. Five people who were present during the altercation testified, and none stated that Rowland had a knife or other weapon in his hand at the time of being struck by Gill, though one of these testified that he did not know whether Rowland had a knife, and the others only testified that they did not see one; however, some of these witnesses did not even see the knife in Gill's hand, and the altercation apparently only lasted for a moment. According to witness Doris, the "scuffle" was over in "about ten seconds." As stated, there was evidence by the State's witnesses to the effect that Gill reached around the two men who were endeavoring to hold Rowland, and struck him with a knife.

We are, however, of the opinion that the judgment of conviction must be reversed because of the failure of the trial court to give an instruction to the jury on self-

defense. No such instruction was given, though appellant requested three different instructions (Defendant's Requested Instructions Nos. 5, 6, and 7) relating to this defense. The Attorney General contends that the proof did not justify an instruction on self-defense, and argues that although the deceased was initially the aggressor, after the affray had been halted, appellant took the initiative and became the aggressor. The State points out that no evidence was presented to show that Gill in any manner attempted to retreat.

We are unable to agree that self-defense was not placed in issue by the testimony. In the first place, appellant's own testimony raised the issue of self-defense. He stated that the deceased hit him on the side of the head, and "I staggered back and when I got straight, James Doris had him and he was breaking loose from James Doris. Q. Which hand did he hit you with? A. His left hand. "Did you see his right hand? A. I seen the knife in his hand. Q. In his right hand? A. That's right. Q. What part of the knife could you see? A. The blade and a little part of the yellow. Q. Was he breaking away from that boy? A. He was about to get loose from James. Q. What did you do then? A. I hit at him. Q. Why did you hit at him? A. He was breaking at me with a pocket knife. Q. You were trying to stop him? A. That's right. Q. Where was the door at that time? A. He was in the door. Q. You had no way to get out of there? A. That's right."

While, as previously pointed out, no witness saw a knife in the hand of Rowland at the time of the stabbing, three of the State's witnesses saw a knife on the ground by Rowland after he had fallen, and two of them stated the blade was open.[1] The evidence reflects that

[1] From the testimony of James Jackson: "Q. What happened to Sam out there? A. He fell. Q. Was he unconscious? A. Yes, sir. Q. Did you see a knife on the ground? A. Yes, sir. Q. What kind was it? A. It had a yellow handle. Q. Was it by his body? A. Yes, sir." From the testimony of Milo East: "Q. Did you see a knife out there? A. Yes, sir. Q. What kind of knife was it? A. Yellow. * * * Q. Was it closed? A. Yes, sir." From the testimony of James Doris: "Q. Did you see a knife laying out there by the side of him? A. Yes, sir. Q. It was laying right beside him? A. Yes, sir. Q. This defendant never was out there? He went out of the house the back way? A. Yes, sir."

Rowland was the largest man in the room, had already struck another participant in the game, and according to R. T. Chatmess, a State's witness, three men were trying to hold Rowland off of appellant during the altercation.

The court correctly refused to give appellant's Instructions No. 6 and No. 7, as they do not properly state the law of self-defense. However, we hold that Requested Instruction No. 5 should have been given. This instruction was based on appellant's theory that the deceased made a fierce assault on Gill with the intent to kill him (Gill) or inflict great bodily injury; that it was as dangerous for appellant to retreat as to stand, and he was accordingly justified in repelling force with force, in defense of his person. While the requested instruction could probably have been worded more clearly, we think it properly embodied the law of self-defense, and under the evidence, should have been given.

Reversed.